# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JENIFER SHULL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 08-CV-412-TLW |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## ORDER AND OPINION

Plaintiff Jenifer Shull seeks judicial review of a decision of the Commissioner of the Social Security Administration denying her claim for disability insurance and supplemental security income ("SSI") benefits under Title II and XVI of the Social Security Act ("SSA"), 42 U.S.C. §§ 416(i), 423, and 1382c(a)(3)(A). In accordance with 28 U.S.C. § 636(c)(1) & (3), the parties have consented to proceed before a United States Magistrate Judge.[1]  [Dkt. # 7].

## Background

Plaintiff was born on August 28, 1980 [R. 429], and was 26 years old on the date of the hearing before the Administrative Law Judge ("ALJ"). [R.467]. Plaintiff attended high school through the 10th grade and earned a GED in 2004. [R. 111, 417]. Plaintiff has been married three times. Her first marriage lasted from 1997 to 1998, her second marriage from 1998 to 2001 and her current marriage from 2004 to present. She has two children from her second marriage, a 5 year old

---

[1] Plaintiff's application for disability insurance benefits and SSI was denied initially and on reconsideration. A hearing before Administrative Law Judge John Volz was held on January 25, 2007. [R.446]. By decision dated April 26, 2007, the ALJ entered the findings that are the subject of this appeal. [R. 18]. The Appeals Council denied plaintiff's request for review on July 10, 2008. [R. 6]. The decision of the Appeals Council represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

son and a 7 year old daughter. [R.251, 417]. Plaintiff's work history includes: rewinder for a wire company, machine operator (manual lathe), online order filler, fast food worker (waitress/cook and carhop), counter cashier for a convenience store and bikini bar dancer. [R. 106-107, 464]. Her longest term of employment was from October 1998 to November 1999 with American Insulated Wire. [R. 97, 467]. She was discharged from that job because her urinalysis tested positive for drug use. [R. 467]. Plaintiff was last employed on December 31, 2004, with Amazon.com working in a storage facility preparing online orders for shipment. [R. 91, 450].

In her application for disability benefits, plaintiff claimed to be unable to work since December 31, 2004, as a result of severe depression, schizophrenia, anxiety, arthritis and asthma. [R. 105]. Plaintiff testified she was unsuccessful in securing employment after discharged from Amazon.com because of her work history of being argumentative with co-workers and supervisors. [R. 453]. Plaintiff admitted that she is physically able to work. She claimed her history of substance abuse restricts her ability to secure work and her mental instability limits her ability to stay employed because she is antagonistic. [R. 453-455]. Plaintiff's claimed disability period is from December 31, 2004 through April 26, 2007.

Plaintiff has a history of substance abuse. At 14 years old, plaintiff regularly used marijuana, and later experimented with alcohol, methamphetamine, and LSD. [R. 252, 417]. Since 16 years old plaintiff has been psychologically dependent on marijuana and later became dependent on Xanax. [R. 235, 252, 334]. Plaintiff received inpatient treatment at the Claremore Stabilization Center from August 10 to August 14, 2005, after intentionally overdosing on prescription drugs. [R. 235, 252]. She had also overdosed approximately two weeks prior to her hospitalization, because she was mad at her husband. [R. 249]. Upon discharge, her physician recommended that she participate in

individual and group rehabilitation counseling and medication management therapy. [R. 238,265, 352]. On November 14, 2005, plaintiff took 10 pills of 200 mg of Seroquel. She was taken by her mother to the emergency room for drug overdose, treated and discharged. [R. 278]. Plaintiff took the medication because she "had an argument with her husband and got angry and upset." She denied that the overdose was a suicide attempt. [R. 280]. Her participation in counseling has been "sporadic and rare." [R. 352,415]. Plaintiff's treating physicians have prescribed, at various times, different psychotropic medications (mood stabilizers, antidepressants and sedatives) to control her anger, depression and insomnia, including Paxil, Prozac, Trileptal, Doxepin, Xanax, Amitriptyline, Klonopin, Effexor, Trazodone, and Thorazine. [R. 127]. Plaintiff's depression, anger and anxiety stems from the problems within her family. She and her husband have a tumultuous relationship, with verbal and physical fights four days a week, usually over money or her talking loud. [R. 329]. Plaintiff's daily use and dependence on marijuana contributes to problems with her family, with anger management, and with depression. [R. 235, 249, 312, 328]. In group rehabilitation, plaintiff states that her primary goal is to be a homemaker and mother and that she has no desire to become employed. [R. 352]. At the hearing before the ALJ, plaintiff testified that she had stopped using marijuana because it made her paranoid and she heard voices. [R. 459].

## ALJ's Decision

In assessing plaintiff's qualification for disability benefits and SSI, the ALJ found at step one that plaintiff has not engaged in any substantial gainful activity since December 31, 2005 the alleged onset date, and that plaintiff met the insured status requirements under the Act. [R. 20]. At step two, the ALJ determined plaintiff's severe impairment to be borderline personality disorder and depressive disorder. [R. 20]. The ALJ noted plaintiff has asthma, but the record indicated her

3

asthma was controlled by medication. Plaintiff also alleged right wrist pain secondary to carpal tunnel syndrome, arthritis and tendinitis but plaintiff admitted she controls those conditions with occasionally use of Ibuprofen. [R. 20]. At step three, the ALJ found that the medical and opinion evidence of record did not establish that plaintiff has an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1, specifically sections 12.04 (affective disorders) and 12.08 (personality disorders). [R. 21]. The ALJ determined that plaintiff retained the residual functional capacity ("RFC") to occasionally lift and/or carry 50 pounds, frequently lift and/or carry 25 pounds, stand and/or walk (with normal breaks) for a total of 6 hours in an 8 hour workday. He found her limitations to be that she is unable to work in coordination with or close proximity to others without being distracted by them and is unable to interact appropriately with the general public. [R. 21]. At step four, the ALJ found that plaintiff was unable to perform her past relevant work as a rewinder, lathe operator, order filer, car hop, fast food worker, cashier and bikini bar dancer. [R. 26]. The ALJ found transferability of job skills was not material to the determination of disability. [R. 17]. At step five, the ALJ considered plaintiff's age, education, work experience, RFC, and the Medical-Vocational Guidelines ("Grid") and found that plaintiff has the capability to perform all or substantially all of the requirements within an unskilled medium occupational base, restricted by the limitations addressed above. The ALJ consulted a vocational expert to determine the extent her limitations impeded the ability to perform work in the national economy. The vocational expert listed three unskilled jobs which met the qualifications: parking lot attendant (light exertion), trimmer (sedentary exertion), and bonder (sedentary exertion). [R. 27]. The ALJ concluded that plaintiff was not disabled within the meaning of the Act. [R. 27]. This finding was the fifth in the five step inquiry outlined in

Williams v. Bowen, 844 F.2d 748, 750-52 (10th Cir. 1988) (discussing the five steps in detail).[2]

## Issues Raised

On appeal plaintiff raises two issues of error.

1. The ALJ determination of plaintiff's RFC is not supported by substantial evidence because controlling weight was not given to the opinion of plaintiff's treating physician and her GAF score was not considered. [Dkt. # 18 at 2]

2. The ALJ's determination of plaintiff's credibility is not supported by substantial evidence. [Dkt. # 18 at 3].

## Discussion

A claimant for disability benefits bears the burden of proving that she is disabled. 42 U.S.C.§ 423 (d)(5); 20 C.F.R. § 404.1512(a). "Disabled" is defined under the Act as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A).

The role of the Court in reviewing the decision of the Commissioner under 42 U.S.C.§ 405(g) is limited to a determination whether the record as a whole contains substantial evidence to support the decision and whether the correct legal standards were applied. See Briggs ex. rel. Briggs v. Massanari, 248 F.3d 1235, 1237 (10th Cir. 2001); Winfrey v. Chater, 92 F.3d 1017 (10th Cir. 1996); Castellano v. Secretary of Health & Human Serv., 26 F.3d 1027, 1028 (10th Cir. 1994). Substantial

---

[2] The five-step sequence provides that the claimant (1) is not gainfully employed, (2) has a severe impairment, (3) has an impairment which meets or equals an impairment presumed by the Secretary to preclude substantial gainful activity, listed in Appendix 1 to the Social Security Regulations, (4) has an impairment which prevents her from engaging in her past employment, and (5) has an impairment which prevents her from engaging in any other work, considering her age, education, and work experience. Ringer v. Sullivan, 962 F.2d 17 (10th Cir. 1992) (unpublished) (citing Williams v. Bowen, 844 F.2d at 750-52.)

5

evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The Court may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. Casias v. Secretary of Health & Human Service, 933 F.2d 799, 800 (10th Cir. 1991). Even if the Court would have reached a different conclusion, if supported by substantial evidence, the Commissioner's decision stands. Hamilton v. Secretary of Health & Human Services, 961 F.2d 1495 (10th Cir. 1992).

First, plaintiff claims the ALJ improperly rejected the opinion of plaintiff's treating physician, Dr. John Mallgren, D.O., who assessed plaintiff with having "markedly limited" ability to perform several mental activities, in favor of the consultative evaluation of Minor Gordon, Ph.D., who opined plaintiff is capable of performing some types of routine work. Plaintiff contends the ALJ erred by: (1) not giving specific, legitimate reasons for rejecting Dr. Mallgren's opinion, (2) by not citing medical evidence which contradicted Dr. Mallgren's opinion, and (3) by failing to consider plaintiff's Global Assessment Functioning (GAF) score, which ranged between 35-41 during plaintiff's disability period.[3] The Court disagrees.

In assessing plaintiff's RFC, the ALJ initially recanted a lengthy and detailed history (from January 2003 to November 2006) of plaintiff's substance abuse, prescription drug dependency, instances of drug overdose, depression, hospitalizations, anger management problems, turbulent

---

[3] "The GAF is a subjective determination based on a scale of 100 to 1 of the clinician's judgment of the individual's overall level of functioning." Langley v. Barnhart, 373 F.3d 1116, 1123 (10th Cir, 2004). Generally, a GAF score of 41-50 indicates "serious symptoms or a serious impairment in social, occupational, or school functioning. Id. See also American Psychiatric Association, Diagnostic & Statistical Manual of Mental Disorders 32 (4th ed. 2000).

family relationships and therapy treatment. [R.22-23]. In summary, the ALJ stated:

> With regard to the claimant's alcohol and drug history, she related that she has smoked marijuana in the evenings at least three to five times a week for the past six years and had smoked it twice since being discharged from the Stabilization Center. She last used meth in 2001 and currently drinks two beers every other weekend. The claimant had been previously hospitalized at the Claremore Stabilization Center two times. She was diagnosed with depression disorder, NOS; cannabis [marijuana] dependence; borderline personality disorder, and current GAF of 41. It was noted that claimant has rather significant issues with mood instability, impulsivity; interpersonal skills; substance abuse. She has experienced two suicide attempts via overdose with prescription medication. She has a lengthy pattern of extreme emotional reactivity which has created severe problems with her ability to interact with others, including her family. She grew up in an alcoholic family system and was frequently abused. It was recommended the claimant attend and participate in pharmacological management, individual rehab, case management, and group rehab to improve these areas (Exhibit 6F). Records for outpatient theory continue through November 28, 2006. At that time, the claimant reported that the only problem was insomnia. She denied suicidal/homicidal ideations or psychosis and indicated that voices are helped by Haldol (Exhibit 17F).
>
> The claimant was admitted to the hospital on November 12, 2005, after taking 10, 200 mg Seroquel. She was transported by ambulance and was found to be hypotensive and tachycardic. The claimant was admitted and kept overnight in ICU (Exhibit 9F).

[R. 24]. Relying on the above summary of plaintiff's medical history, the ALJ focused on the

opinion of plaintiff's treating Dr. John Mallgren, in finding:

> Treatment notes dated February 21, 2006, from John Mallgren, D.O. show the claimant had been lobbying for a change of her axis I diagnosis, apparently in an attempt to build a stronger case for disability. He added, 'I am of the opinion that it would be in her best interest to be gainfully employed in some manner.' Dr. Mallgren also noted, 'She also again today did do some med seeking, specifically requesting Xanax.' On March 21, 2006, the claimant indicated that on her own, she had increased the doxepin and with that has slept

> better (Exhibit 10F).
>
> Dr. Gooch saw the claimant on June 27, 2006, and noted she exhibited some paranoia. 'She could not have been in the room more than 10 minutes prior to me seeing her, but she stated she has been here over an hour and a half, and we just avoided serving her because she was oklahoma Medicaid and it was very personal to her." On August 23, 2006, the claimant stated she had gone to the lake and heard people across the lake from her talking about her. On August 23, 2006, the claimant stated she was still hearing voices. She was diagnosed with paranoid schizophrenia (Exhibit 13F).

[R. 25]. Following his nine-paragraph extensive account of plaintiff's medical history, the ALJ next provided a summary of Dr. Mallgren's assessment of plaintiff's mental RFC on November 6, 2006. Citing Exhibit 16F, the ALJ noted that Dr. Mallgren found plaintiff was "moderately" limited in some mental functions and "markedly limited" in others. [R. 25]. The ALJ determined that Dr. Mallgren's opinion was "entitled to little weight" because it was inconsistent with his prior opinion [that it was in plaintiff's best interest to be gainfully employed] and inconsistent with Dr. Mallgren's own treatment records [that plaintiff is attempting to build a stronger case for disability]. [R. 311]. Dr. Mallgren's treatment records indicate that plaintiff's mental health problems are being controlled, no indications of suicidal/homicidal ideations and no psychotic symptoms. To treat plaintiff's "difficulty with anger" Dr. Mallgren eliminated plaintiff's prescription for Wellbutrin. [R. 310].

As additional support for his determination that plaintiff is capable of light work, with certain limitation, the ALJ gave greater weight to the mental assessment and consultative evaluation provided by Dr. Minor Gordon, Ph.D. and the numerous recognized diagnostic techniques Dr. Gordon relied upon to support his opinion. The ALJ stated:

> Minor W. Gordon, Ph.D., performed a consultative evaluation on

> February 27, 2007. Administration of the Wechsler Adult Intelligence Scale-III revealed a full scale IQ of 85. On the Becky Depression Inventory, she earned a total score of 44, which is interpreted as an individual suffering from an extremely severe level of depression. She earned a total score of 18, on the Becky Anxiety Inventory, which is interpreted as an individual suffering from a moderate level of anxiety. On the Minnesota Multiphasic Personality Inventory-II, the claimant produced a protocol of questionable validity due to a clear exaggeration of her symptomatology and was seen as immature, narcissistic and self-indulgent. He summarized that the claimant's rationale for her application for disability benefits was the fact that she either quits or is fired because she does not get along with the boss. She indicates the reason she is taking the various psychotropic medications is because she hears voices, but her treating psychiatrist indicated that she had been lobbying for an Axis I diagnosis to further enhance her chances of receiving disability benefits. Additionally, she admitted to previously abusing Xanax and has a history of cannabis dependence. Dr. Gordon wrote that the claimant is functioning within the average range intellectually with no significant memory impairment. He added that *any existent impairment should not preclude her from being able to follow oral one and two step instructions, she can communicate with coworkers and supervisors on a superficial level for work purposes, and she should be able to perform some type of routine and repetitive tasks on a regular basis* (emphasis in text). The doctor diagnosed the claimant with depression, NOS, secondary to borderline personality disorder; and a GAF of 65. Dr. Gordon completed a medical source statement and found the claimant "moderately" limited in her ability to understand and remember detailed instructions; carry out detailed instructions; and interact appropriately with the general public (Exhibit 18F).

[R. 25-26]. The ALJ concluded that he "g[ave] Dr. Gordon's opinion greater weight as it is well supported by the medical evidence and is not inconsistent with other substantial evidence." [R. 26].

Thus, the Court finds that the ALJ's determination of plaintiff's RFC is supported by substantial evidence and that the correct legal standard was applied. The ALJ entered specific findings by stating the medical evidence he accepted and rejected and linked those findings to specific citations in the record. The ALJ stated that he considered all the relevant evidence, he

9

discussed the evidence which supported his decision, the uncontroverted evidence he chose not to rely upon and the significantly probative evidence he rejected. The ALJ demonstrated why the opinion of plaintiff's treating physician is inconsistent with other substantial evidence of record and he gave specific and legitimate reasons for his decision giving greater weight to Dr. Gordon's opinion. Thus, the ALJ complied with the requirements of 20 C.F.R. § 416.927(d)(2). Under the SSA, the opinion of a treating physician concerning the nature and extent of plaintiff's disability is entitled to "controlling weight" when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is not inconsistent with the other substantial evidence in [her] case record." Id. The Tenth Circuit instructs that "[a]n ALJ may disregard a treating physician's opinion, however, if it is not so supported." Doyal v. Barnhart, 331 F.3d 758, 762 (10th Cir. 2003). The Court finds that the ALJ gave good reasons for giving lesser weight to the opinion of the treating physician, and he cited medically acceptable clinical diagnostic techniques which were applied by Dr. Gordon, in giving greater weight to Dr. Gordon's assessment.

Plaintiff also challenges the ALJ's failure to address and rely on the assessment of Dr. Mallgren's staff that plaintiff has a GAF score ranging from 35 to 42 which indicates 'serious symptoms (e.g. suicidal ideation, severe obsessional rituals, frequent shoplifting), OR any serious impairment in social, occupational, or school functioning (e.g., no friends, inability to keep a job)." (Dkt. # 18 at 5) (citing Langley v. Barnhart, 373 F.3d 1116, 1123 (10th Cir. 2004)). Plaintiff also cites authority that a GAF score of fifty or less, suggests an inability to keep a job. See Oslin v. Barnhart, 69 Fed. Appx. 942, 947 (10th Cir. 2003).

The Court finds that the ALJ did not err in failing to address and rely on the assessment of Dr. Mallgren's staff, who gave plaintiff a GAF score ranging from 35 to 42, because the ALJ did

10

take into consideration medical evidence of plaintiff's psychological evaluation, which is similar to the one used to arrive at a GAF score. The ALJ relied on medical evidence in the record, and the ALJ explained why he discounted other evidence in the record which supported plaintiff's claim. As shown above, the ALJ gave specific reasons for his findings with references to the record in his RFC determination. Moreover, the record shows that Dr. Gordon evaluated plaintiff to have a GAF of 65. There is a difference of opinion among those clinicians who evaluated plaintiff's mental condition and thus the evidence was controverted. The Tenth Circuit has stated that, "a low GAF score does not alone determine disability, but it is instead a piece of evidence to be considered with the rest of the record." Petree v. Astrue, 260 Fed.Appx. at 42 (citing Howard v. Comm'r of Soc.Sec., 276 F.3d 235, 241 (6th Cir. 2002)) ("While a GAF score may be considerable help to the ALJ in formulating the RFC, it is not essential to the RFC's accuracy."). Thus, the Court finds no merit to plaintiff's first assignment of error.

As her last issue, plaintiff claims the ALJ's determination of her credibility is not supported by substantial evidence in the record. In assessing plaintiff's credibility, the ALJ considered the evidence of record and found that plaintiff's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that the plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely credible. [R. 22]. Included in the ALJ's thorough evaluation of plaintiff's medical history, the ALJ relied on plaintiff's own statement as to her rationale for filing for social security disability benefits (i.e., she either quits or is fired because she does not get along with the boss) and corroborating medically acceptable diagnostic tests (which indicated a clear exaggeration of symptoms, and an immature, narcissistic and self-indulgent demeanor). [R. 25-26].

Credibility determinations are peculiarly the province of the finder of fact, and the Court should affirm that finding if it is closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings. Hill v. Astrue, 289 Fed. Appx. 289, 294 (10th Cir. 2008) (unpublished).[4] The evidence relied upon by the ALJ clearly shows that plaintiff was not following the prescribed treatment of her treating physicians. Plaintiff overdosed on prescription drugs on more than one occasion. Also, plaintiff failed to regularly attend her theory and drug management counseling. The Tenth Circuit has held that a claimant's failure to follow a doctor's instructions is a factor in determining credibility. Sims v. Apfel, 172 F.3d 879 (10th Cir. 1999) (unpublished). Plaintiff fails to cite to any medical evidence which contradicts the ALJ's assessment of plaintiff's credibility. Plaintiff's arguments are merely conclusory. Thus, the Court finds that the ALJ's determination of plaintiff's credibility is supported by substantial evidence.

## Conclusion

The Court finds that the ALJ decision is supported by substantial evidence in the record and the correct legal standard was applied. Accordingly, the decision of the Commissioner finding plaintiff not disabled is hereby AFFIRMED.

IT IS SO ORDERED this 16th day of September, 2009.

T. Lane Wilson
United States Magistrate Judge

---

[4] Unpublished decisions are not precedential, but may be cited for their persuasive value. See Fed. R. App. 32.1: 10th Cir. R. 32.1.